## Case No. 11,908.

ROBERTS et al. v. The OCEAN STAR.[1]

District Court, S. D. Florida. Dec., 1860.

SEAMEN — SALVAGE — WAGES — AVERAGE — ABANDONED VOYAGE—DAMAGE TO SHIP.

[1. Seamen, after a wreck, may recover from the materials and cargo, in the ratio of their respective values, wages for the time spent in saving them. Unless their services are very extraordinary, they are not entitled to salvage.]

[2. When a vessel puts into a port of necessity, the wages and provisions of the crew are not chargeable upon the cargo in general average if the voyage is there abandoned, but they are so chargeable if it is resumed, and the cargo delivered at the port of destination.]

[3. Loss or damage to a wrecked ship or her tackle in consequence of successful efforts to get her afloat with her cargo, or for the common benefit, should be apportioned upon ship and cargo, but, if the efforts fail, the loss should fall wholly on the ship.]

[4. Damage to the materials of a lost ship in saving the cargo should be paid by the cargo.]

[5. A ship floated off a reef by putting a part of the cargo into a wrecking vessel should contribute to the loss or damage suffered by such part. The liability of the wrecker for damage caused by his own fault does not, in the absence of payment by him, discharge the liability of the ship.]

[6. When a ship makes a port of distress in such a condition that she ought to be discharged for the common benefit, the expenses of pumping and unloading, removing cargo to a warehouse, storing cargo, wharfage on the ship before discharging cargo, and wharfage on cargo upon landing, should be apportioned upon ship and cargo.]

[7. The total salvage upon a ship and cargo saved together should be apportioned between them in the ratio of their values.]

[8. When a ship is wrecked and lost, each separate article of the cargo saved should bear its own expense of saving, landing, and storing, so as to do justice to different shippers of different kinds of goods. But articles of the same kind, saved at the same time, by the same salvors, and in a similar condition, may generally be charged with the same rate of salvage; and notary's fees, costs of the salvage suit, and similar charges for the common benefit should be apportioned.]

[9. When transshipment is necessary in a port of distress, a reasonable compensation for the master's time and expense in securing another vessel should be charged upon the cargo, except where he transships to earn his original freight.]

[10. The master's delay and expense in traveling to consult the shipowner or underwriter upon the propriety of abandoning the voyage at a port of distress ought not to fall upon the cargo if the voyage is abandoned, and probably not if it is completed.]

[11. When a voyage is abandoned in a port of distress, the expense of the master's passage home should not fall upon the cargo.]

[12. Pilotage into a port of distress, together with customhouse and notary's fees there, and surveyor's and diver's charges rendered with a view to determine the question of repairs, as well as the costs of a salvage suit, should be apportioned upon the ship and cargo.]

[13. The master's agent or consignee in a port of distress should classify his accounts for disbursements and commissions as follows: (1) On account of the ship or materials alone, (2) on account of the ship and cargo, (3) on account of the cargo alone.]

[This was a libel for salvage by Joseph W. Roberts and others against the American ship Ocean Star and cargo. A decree was rendered for libelants. (Unreported.) The hearing is now upon the apportionment of salvage and expenses between ship and cargo.]

Winer Bethel, for libelant.

S. J. Douglass, for respondent.

MARVIN, District Judge. This ship, laden with 2,598 bales of cotton, bound from New Orleans to Liverpool, ran ashore on the Florida reef, from which she was got off by the assistance of a number of wrecking vessels. The wreckers carried out three anchors, lightened the ship of 383 bales, and heaved her off the reef, in a condition badly damaged, and leaking. Some days since, the court decreed to the wreckers for their salvage services $16,500, valuing the ship at $2,500, and the cargo at $104,000. The vessel has been condemned, and the cargo is to be transshipped in another vessel. The transshipment of the cargo has made it necessary, in order to protect the just rights and interests of the parties concerned, that the salvage and expenses should be adjusted and distributed between the ship and cargo, so that the sum which each ought to pay may be distinctly ascertained. Some few errors, trifling in their pecuniary results, but still errors, have heretofore been committed by the court in making similar distributions, owing to a want of time to consider fully the questions involved, without detaining the vessel employed to carry on the cargo. To correct these errors, and to prevent their being followed in future, as precedents, is the principal object of this opinion.

It is an obvious principle of equity that whenever expenses have been necessarily incurred for the common benefit of two or more interests, by a person authorized to act on behalf of the parties concerned, the interests benefited ought to contribute to the expenses in proportion to their respective values. And whenever expenses have been rightfully incurred for the benefit of one interest alone, that interest alone ought to bear the burden of it.

Bearing these principles in mind, we proceed to remark upon the topics involved in the subject, as follows:

1. Wages and Provisions of the Crew. Such is the nature of the contract between the shipper and shipowner, and such is the law applicable to such contract, that the master must not abandon his ship or cargo upon any ground, when it is practicable for human exertions, skill, and prudence to save them, or any part of them, from im-

---

[1] [Not previously reported.]

pending peril. A loss of the goods, caused by negligence, carelessness, or unskillfulness, or any loss which might have been prevented by human exertions, is not a loss by a peril of the sea, which exonerates the master and shipowner, under their bill of lading, from liability. After shipwreck, the master is bound to exert himself to the utmost to save the goods, and to attend to their safe custody and preservation. In Cordes v. The Niagara, 21 How. [62 U. S.] 7, the supreme court of the United States held that the shipowner was liable for loss and damage happening to the cargo after the ship had stranded, because the master did not sufficiently exert himself to prevent such loss or damage. And in King v. Shepherd [Case No. 7,804], the shipowner was held liable for the loss or theft of a keg of specie, happening while the ship was stranded on the Florida reef. In like manner, the seamen are bound to labor in saving the materials and cargo of a wrecked ship, under a penalty of a forfeiture of their wages, and, according to the laws of Oleron, "le plus grande punition." The materials saved, and the freight in the cargo, if the original freight can be earned by a transshipment of the cargo, are both pledged to the seamen for their wages. But, although the master and crew are thus bound to labor in saving the cargo, yet they are not bound to do this at their own or the shipowner's expense, after the ship has become a total wreck, and no freight has been or can be earned. If, after this event, the master and crew labor in saving the cargo, or any part of it, they do so, not as the crew of the ship now lost, but as the agents or servants of the shippers, being constituted such by operation of law consequent on the disaster, and they are to be paid by them a reasonable compensation out of the merchandise saved by them. If they save the materials, or materials and cargo together, the interest or interests benefited by their services ought to pay the expense. Wages by the day at the rate of their monthly wages and provisions would always be reasonable, and is the rule adopted by the French Code. In extraordinary cases a small additional sum might be rightfully allowed, but they are not, except for every extraordinary service, entitled to the reward of salvors. Bridge v. Insurance Co., 1 Hall, 423; 2 Phil. Ins. § 1472; Wreck and Salvage, § 149; Code de Commerce, par J. A. Rogron, § 261; General Average, by Baily, 124. Generally, however, on this coast, the slight services of the seamen to the cargo after the ship is lost are no more than a fair equivalent for saving their own personal effects by the wreckers; and, as to any slight difference, "de minimis non curat lex." But if they continue for several days or weeks to labor in saving the cargo, as in some instances they have done on this coast, they are entitled to be paid by the day, as above stated, out of the cargo saved by them. The cargo is not to be made liable for any part of the wages and provisions of the crew during the time they are employed in getting off a ship accidentally stranded. Some average adjusters in the United States make the cost of wages and provisions a common charge from the time that the ship, being floated, bears away to go into a port of refuge, to the time the voyage is abandoned. I have not met with any decision of our courts expressly affirming or disaffirming this practice. There are very respectable dicta against it. Justice Story says "that the expenses of going to a port of necessity to refit can properly be a general average only where the voyage has been or might be resumed. If it has been abandoned from necessity, then it is not a case for the application of the doctrine." Williams v. Suffolk Ins. Co. [Case No. 17,739]; 2 Pars. Mar. Law, 314. It appears to me that upon principle the cargo ought not to be held liable in general average for the wages and provisions of the crew, when the voyage is abandoned at the port of necessity, but only where the voyage is resumed, and the cargo delivered at its port of destination.

2. Loss or Damage. If loss or damage happens to the anchors, chains, hawsers, or other parts of the ship in consequence of efforts made to get a stranded ship afloat with the cargo or a part thereof, or with a view to the common benefit, such loss or damage, if the ship is again set afloat, should be apportioned upon ship and cargo; but if the ship is not again set afloat, the loss or damage should rest where it falls. Stevens & Benecke, 139. If, the ship being actually lost, the blocks, falls, ropes, or other parts of the ship are lost or damaged in getting out the cargo, such loss or damage, estimated with reference to the actual value of the articles as detached materials, ought to be made good to the ship by the cargo saved. If goods put in a wrecking vessel to lighten the ship off the reef are lost or damaged, the ship, if got off, should contribute to the loss or damage. If lost or damaged by the fault of the wrecking vessel, the wrecker should make good the loss or damage, though his liability, without payment, will not exonerate the ship for its contributive share.

3. Expenses of Unloading. If the ship arrives in a port of distress in a leaky condition, or in such a condition as makes it necessary that she should be discharged for the common benefit, the expenses of hiring men to pump and unload the ship, and to remove the cargo from the wharf to a warehouse, the wharfage on the ship before the cargo is discharged, the wharfage on the cargo upon landing, and the use of trucks and labor in storing the cargo, are all expenses incurred for the common benefit, and should be apportioned upon the ship and

cargo. Stevens & Benecke, 124. The ship and cargo being separated, each interest thereafter should bear its own expense, except, indeed, where they are again reunited, and the voyage completed, when the expenses are adjusted according to the law of the port of delivery.

4. Salvage and Expenses. When a ship and cargo are saved together, as, by lightening the ship, carrying out anchors, etc., the total salvage is apportioned upon the ship and cargo, according to their respective values. But when the ship is wrecked and lost, the interests are thereby dissociated, and, inasmuch as the different articles of the cargo are likely to belong to different owners, each separate article of the cargo saved, as near as may be, to bear its own expense of saving, so that dry cotton belonging to one owner shall not pay for saving wet cotton belonging to another, nor silks pay for saving railroad iron. Articles, however, of the same kind, saved at the same time, by the same salvors, in a similar condition, may generally be charged with the same rate of salvage. So, too, in such cases, the wharfage, storage, labor bills in lading and storing the goods saved, ought, as near as may be, to be charged to the separate articles saved, so that goods of great value and little bulk shall not be made to pay the expenses on goods more bulky and less valuable. Expenses of sale should be charged to the goods sold. In such cases, however, the notary's fee for noting and extending the master's protest, cost of documents useful to all the parties interested, and the costs of a salvage suit instituted by all the salvors against all the property saved, are ordinarily treated as common charges, and apportioned.[2]

5. Expenses of Delay and Transshipment. If, the ship being lost or rightfully condemned, the master transships the cargo, the expense of his necessary detention, or traveling to an adjacent port to procure a vessel for that purpose, including a reasonable compensation for his time and labor, ought to be charged to the cargo transshipped. As between the shipowner and his underwriter, the exact wages of the master, without regard to primage, is what is allowed in general average adjustments for his time and labor, for this is all the shipowner pays or loses. But in transshipping cargo, under justifiable circumstances, the master acts as the agent of the shippers, except, indeed, where he transships to earn his original freight,—a case which rarely or never occurs in this port,—three dollars a day and his board have been the customary sum allowed the master by this court during his necessary detention to transship the cargo. In a few instances five dollars a

day have been allowed. But I think, on reflection, that from two to four dollars a day and board is more reasonable, varying the sum according to the size of the vessel he commanded. If the master's detention is caused by the ship as well as the cargo, the expense ought to be apportioned. No part of the expense of delay or traveling to consult the shipowner or underwriter upon the propriety of abandoning the voyage or repairing the ship ought to be charged to the cargo if the voyage is abandoned, and probably not if the voyage is completed. In a few instances, in this court, the master's passage money home has crept into the accounts, and has been allowed to pass as a common charge; but no part of this expense can be rightfully charged to the cargo. The cargo is not benefited by the master's going home.

6. Pilotage into port, fees of entry at the custom house, the notary's fees, surveyor's and diver's fees for surveying the ship and diving under her bottom before an abandonment of the voyage, with a view to determine the question of repairs, the costs of a salvage suit instituted against ship and cargo, are all generally apportioned upon ship and cargo.

7. It will be seen from the principles stated that the accounts of the master's agent or consignee divide themselves into three classes: (1) Disbursement on account of the ship or materials alone; (2) on account of the ship and cargo; (3) on account of the cargo alone. His commissions arrange themselves in the same manner. Care ought to be taken, particularly as to the labor bills, that the charge is entered to the right account, and for the right time, and that the account shows fully the cause or nature of the charge. In the present case the clerk is ordered to apportion the salvage between the ship and cargo, and adjust the bills of disbursements according to the principles laid down in this opinion, and report a statement of the result to the court for its approval.

NOTE. It may be useful to advert to some of the principles or usages which govern the adjustment of expenses incurred in a port of refuge, when the ship finishes her voyage, and delivers her cargo at its port of destination.

By the law of most of the commercial states of the United States, if a master, in consequence of some disaster, for the common safety of ship and cargo, voluntarily puts into a port of refuge, and there necessarily, and for the common benefit, unloads the cargo to repair the ship, and the ship is repaired, and completes her voyage, the pilotage in and out, customhouse and health officers' fees, protest, survey of the ship to determine her condition, postage and telegraphic dispatches, when not repairing, the wharfage on the ship, the wharfage and storage of the cargo, the expense of unloading and reloading, accidental damage done to the cargo in consequence of unloading, hire of people to guard the property or to pump the ship, commissions on advances by the ship's agent so far as the same are for general average purposes, and in general all the expenses incurred for the general good, and not properly belonging to the repairs of the ship, including the wages and provisions of the crew from the time the ship voluntarily changed her course to go into the port to the time she left it to resume her

---

[2] Salvage on goods saved from a wrecked ship are often, in England, apportioned pro rata, by average adjusters, without regard to any difference in the expense of saving the different articles, on the ground of convenience.

voyage, are considered as general average charges, and are contributed for by ship, freight, and cargo, according to their respective values. By the usage at Lloyd's in such cases, the pilotage in, boat hire, harbor duties, quarantine and health dues, customhouse fees, postages and dispatches, use of warps and tackle, and the wharfage on the ship while unloading, expense of unloading and putting the cargo in store, are general average charges. The cargo being separated from the ship, and stored in safety, the general average charges cease. Storage of the goods, cooperage, drying or improving their condition, are charged to the goods. Conveying back the goods from the warehouse to the ship, the wharfage on the ship and goods on reloading, labor of reloading and restowing, use of cotton screws for cotton cargoes, pilotage or towage out, are charged to the freight. Wages and provisions for the crew are never charged in England to general average, nor to the underwriter on ship or freight. The loss falls on the shipowner.

According to the decisions of some of the French tribunals, the expenses of unloading, storing, and reloading the cargo to make repairs, in a port of refuge, in consequence of damage done to the ship by storms or other vis major, and not voluntarily inflicted for the common safety, are not subjects of general average contribution, but fall on the ship alone; the shipowner being held bound to keep his ship in repair, and must, therefore, pay the expenses of unloading to make the repairs. Code de Commerce, par M. Rogron, art. 403, et com.; Emirigon's Traite des Assurance, note by Boulay-Paty, tom. 1, p. 620. Others have held, in near accordance with our law, that if the going into port was voluntarily determined on by the master and crew, after "deliberation motives," under circumstances of pressing urgency, in order to save the cargo, as well as repair the ship, that such departure from the voyage is a general average act, and the necessary expenses of unloading, storing, and reloading the cargo in order to repair the ship and proceed on the voyage are to be contributed for in general average. Droit. Com. par M. Pardessus, tom. 3, § 741; Traite des Avaries, par Ernest Fregnet, Paris, 1859, tom. 1, § 419. The French Code, arts. 400 and 403, makes wages and provisions during a deviation and delay for repairs a particular average on the ship when it is chartered for the voyage, and general average when it is chartered by the month; and the damages to be repaid were voluntarily inflicted for the common safety. Repairs, in which is to be included the dockage or wharfage of the ship while undergoing them, are never contributed for in general average by the laws of any commercial nation known to me, except where they are made necessary by an injury voluntarily inflicted for the common safety, or where they are temporary merely, and necessary to save and carry on the cargo, but are afterwards of little or no benefit to the ship. So far as such temporary repairs are of any lasting or peculiar value to the shipowner, he must pay for them.